```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION


FAHIMA ("Nicky") ALI JACKSON,  )
Ph.D.,                         )
                               )
          Plaintiff            )
                               )
     v.                        )   Case No. 2:04 cv 466
                               )
TRUSTEES OF PURDUE UNIVERSITY, )
                               )
          Defendant            )
```

OPINION AND ORDER

This matter is before the court on the Motion For Partial Summary Judgment filed by the defendant, Trustees of Purdue University, on April 21, 2006; the Defendant's Second Motion For Summary Judgment filed by Purdue on June 30, 2006; and the Motion To Strike filed by Purdue on August 10, 2006. For the reasons set forth below, the defendant's Motion For Partial Summary Judgment (DE 23) is **DENIED WITHOUT PREJUDICE**, the Second Motion For Summary Judgement (DE 34) is **GRANTED**, and the Motion To Strike (DE 45) is **DENIED AS MOOT**.

Background

Prior to 1990, department heads in the Behavioral Sciences and the History and Political Science Departments of Purdue University Calumet created a Criminal Justice program at the University. (Dep. of Saul Lerner, p. 28) The program was designed to "set astride" the two departments, allowing each department to tailor criminal justice courses to their department. (Lerner Dep. p. 28) The program required the addition of a professor with

criminal justice expertise, and the plaintiff, Fahima "Nicky" Ali Jackson, an Asian, was hired to fill this position. (Lerner Dep. p. 28; EEOC Charge p. 3)  Though the criminal justice program was coordinated between the two departments, Jackson was housed in the Department of Behavioral Sciences. (Lerner Dep. p. 28)

Jackson was hired as an assistant professor in 1990, prior to the completion of her Ph.D. (Dep. of Fahima Jackson, p. 9) She completed her Ph.D. in sociology with a concentration in deviance and was promoted to associate professor of criminal justice, with tenure, in 1995 or 1996. (Jackson Dep. pp. 89, 4; EEOC Charge p. 3) During this time, Jackson routinely taught two "dual-listed" courses, Field Experience in Criminal Justice (POL/SOC 443) and Introduction to Criminal Justice (POL/SOC 343). (Jackson Dep. p. 256) In addition, Jackson regularly taught Introduction to Sociology (SOC 100), Juvenile Delinquency (SOC 421), and a course that Jackson created, Victimology (SOC 491A). (Def. Ex. D; Lerner Dep. p. 62)

On April 10, 2000, in accordance with University policies, Jackson filed an internal complaint alleging that she was subjected to gender discrimination by Michael Flannery, the head of the Behavioral Sciences Department. (EEOC Charge p. 3) Jackson claimed that her salary increase for the 2000-01 academic year was inconsistent with the increases received by white male faculty, despite positive performance evaluations. (EEOC Charge pp. 3-4) Jackson alleged that Flannery harassed her by demanding that Jackson provide him with written notice of her location when

2

she was not on campus and spying on her when she was. (EEOC Charge p. 3) The University denied her complaint on June 16, 2000. (EEOC Charge p. 4)

On September 13, 2001, Jackson filed a charge with the Hammond Human Relations Commission and the Equal Employment Opportunity Commission alleging discrimination based upon race, color, sex, national origin, and retaliation. (EEOC Charge p. 1) Jackson alleged that, following denial of her complaint by the University, Flannery retaliated by denying her a raise for the 2001-02 academic year, denying her request for sabbatical leave, and encouraging one of Jackson's students to file charges of harassment against her. (EEOC Charge p. 4) Jackson further stated more generally that Flannery and the University discriminated against women and Asians with respect to salary. (EEOC Charge p. 4)

Jackson resolved her claims with Purdue and entered into a settlement agreement with the University on April 2, 2002. (Release p. 6)  Jackson withdrew the charges filed with the EEOC and Hammond Human Relations Commission prior to receiving a notice of right to sue from the EEOC. (Complaint ¶ 5) According to the terms of the agreement, Jackson was transferred from the Behavioral Sciences Department to the History and Political Science Department. In addition to providing backpay and compensatory damages, the University agreed to a series of non-retaliation provisions, to distribute assignments and work-related responsibilities to Jackson consistent with other History and Political Science faculty, and to provide staff support and

3

compensation to Jackson commensurate with other faculty. According to the agreement, if Jackson

> believes that she has been the victim of retaliation in violation of the [agreement], she shall notify her department head in writing, and the University shall have a period of forty-five (45) days in which to investigate and correct any resultant charge of retaliation to the satisfaction of the University and Jackson. Jackson shall refrain, during such forty-five (45) day period, from filing any proceedings before any court or administrative agency, including the EEOC, State Civil Rights Commission, or local human rights agency.

(Release pp. 3-4)

Jackson sent five notices of retaliation to her department head, Saul Lerner, between March 31, 2003 and November 14, 2005. The instances of retaliation that Jackson described in these letters largely focused upon alterations made to her teaching schedule by Flannery.  She stated that Flannery removed her as the instructor of Introduction to Sociology and added a section of the Field Experience course and other courses in the Sociology Department to compete with a comparable course that she taught in the Behavioral Sciences Department. (Jackson 3-31-03 Letter) Jackson alleged that these alterations occurred despite the practice at the University that professors must be included in, and consent to, a decision to alter class schedules. (Jackson 3-31-03 Letter)

In her second notice of retaliation to Lerner, Jackson described the difficulty she experienced reconciling a dispute between two students enrolled in her Field Experience course and

4

the local agency where the students were conducting their internships. (Jackson 4-3-03 Letter) According to Jackson's notice, before she was able to solve this matter, Linda Mura, an advisor in the Behavioral Sciences Department, advised the students to withdraw from Jackson's course and register for the same course with a different instructor over the summer. (Jackson 4-3-03 Letter) According to Jackson, Mura failed to consult with her and undermined her authority with these students.

Jackson again accused Flannery of retaliatory conduct in February 2004 and October 2005. (Jackson 2-12-04 Letter; Jackson 10-26-05 Letter) She stated that Flannery refused to list her as the instructor of the Juvenile Delinquency course (SOC 421), did not grant her request to teach Introduction to Criminal Justice (SOC 343), and offered courses solely in the Behavioral Sciences Department that were formerly "dual listed" as a means of diverting students from Jackson to other instructors. (Jackson 2-12-04 Letter; Jackson 10-26-05 Letter)

On October 8, 2004, Jackson filed her complaint in Lake Superior Court, which was removed to this court on November 18, 2004. In the complaint, Jackson alleged that Purdue breached the settlement agreement. She sought relief under Indiana Code §20-12-1-8(b), the section of the Indiana Educational Code that prohibits the adverse treatment of state university employees for reporting violations of state or federal laws. Jackson also sought relief under Title VII and damages for emotional distress.

5

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); **Lawrence v. Kenosha County**, 391 F.3d 837, 841 (7th Cir. 2004); **Branham v. Snow**, 392 F.3d 896, 901 (7th Cir. 2004); **Windle v. City of Marion, Indiana**, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Company**, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); **Lawrence**, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); **Ballance v. City of Springfield, Illinois Police Department**, 424 F.3d 614, 616 (7th Cir. 2005); **Hottenroth v. Village of Slinger**, 388 F.3d 1015, 1027 (7th Cir. 2004); **Palmer v. Marion County**, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. **Spiegula v. Hull**, 371 F.3d 928, 935 (7th Cir. 2004); **Hines v. British Steel Corporation**, 907 F.2d 726, 728 (7th

Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  ***Roger v. Yellow Freight Systems, Inc***., 21 F.3d 146, 148 (7th Cir. 1994).  *See also **Miller v. Borden, Inc***., 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also **Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder

7

could find for the nonmoving party"); **Schuster v. Lucent Technologies, Inc**., 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The enforcement of Title VII requires a series of steps prior to filing a civil action. 42 U.S.C. §2000e-5 *et. seq*. The pertinent section of Title VII provides that

> if a charge filed with the commission . . . is dismissed by the commission or if within one hundred and eighty days from the filing of such charge . . . the commission has not filed a civil action under this section or the commission has not entered into a conciliation agreement to which the person aggrieved is a party, the commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

42 U.S.C. §2000e-5(f)(1)

The statute requires that a civil litigant must file a charge with the EEOC and provide the agency with 180 days in which to investigate and seek conciliation between the parties. **Connor v. Illinois Department of Natural Resources,** 413 F.3d 675, 680 (7th Cir. 2005). At the conclusion of this period, if the agency has not filed suit or successfully entered a conciliation agreement, the agency must provide notice "signifying that the EEOC will not provide [the claimant] with any relief." **Hill v. Potter**, 352 F.3d 1142, 1145 (7th Cir. 2003) "Title VII does not authorize the filing of suit until the plaintiff has exhausted

8

his administrative remedies, which means not until he has received a right-to-sue letter from the EEOC." *Hill,* 352 F.3d at 1145 (internal citations omitted).

The failure to obtain a right-to-sue letter does not deprive the court of subject matter jurisdiction. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982); *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001). Instead, this deficiency provides an affirmative defense, analogous to a statute of limitations and subject to modification under equitable principles. *See Sherman v. Standard Rate Data Service, Inc.*, 709 F.Supp. 1433, 1437 (N.D. Ill. 1989). Situations in which courts have applied equitable principles to grant relief from the requirement of a right-to-sue letter in Title VII cases include

> 1) when a claimant has received inadequate notice; (2) when a motion for appointment of counsel is pending; (3) when a court has led a plaintiff to believe that he or she has done everything required; (4) when affirmative misconduct has lulled a plaintiff into inaction; (5) when a plaintiff has in some extraordinary way been prevented from asserting his rights; (6) when a plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum; (7) when a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; or 8) when the EEOC or Attorney General has incorrectly refused to issue a right to sue letter. (internal citations and quotations omitted)
>
> *Sherman*, 709 F.Supp. at 1437

Jackson does not argue that these circumstances are applicable to her claim. Rather, Jackson argues that because her current allegations are sufficiently related to the charge she filed with the EEOC in 2001, the lack of a right-to-sue letter does not defeat her claim. The argument might have merit if a right-to-sue letter had been received in response to Jackson's 2001 charge. *See e.g.* **Conner**, 413 F.3d at 678 ("[T]he EEOC issued a Dismissal and Notice of Rights to Conner, giving her 90 days to file a lawsuit against the department."). However, Jackson's reasoning improperly collapses the need to have filed an EEOC charge that describes the same conduct alleged in the civil complaint, and independently, the need to receive a right-to-sue letter, into a single requirement. The cases that Jackson relies on address instances when a subsequent civil complaint was found sufficiently related to a prior EEOC charge which had been properly exhausted. See **King v. Gonzalez**, 2005 WL 1175135, at *11 (N.D. Ind. 2005)("King followed the proper procedures and exhausted all of the administrative remedies . . . for his race discrimination claim."); **Hill**, 352 F.3d at 1146. *See also* **Connor**, 413 F.3d at 678; **Geldon v. South Milwaukee School District**, 414 F.3d 817, 818 (7th Cir. 2005).

Jackson further cites to cases in which the receipt of the right-to-sue letter never was raised as an affirmative defense by the opposing party. The fact that the court in those cases referenced only the "filing" of the charge in no way can be read to include a tacit abandonment of the remaining exhaustion re-

10

quirement. By comparison, Jackson presents a situation in which the prior EEOC charge never was exhausted. Even if the retaliation Jackson alleges grows out of the events first described in her EEOC charge, that does not cure the fact that there has never been a right-to-sue letter issued in this case.

Jackson argues that a common-sense reading of Title VII's administrative requirements leads to the conclusion that Jackson should not be required to provide the right-to-sue letter. Because the case was settled and withdrawn, the reasoning goes, no right to sue letter was necessary. According to Jackson, there is no reason to treat the conclusion of the administrative process differently when it is ended by the receipt of the right-to-sue letter as compared to terminating the EEOC process by voluntary dismissal. The argument, however, makes Title VII's exhaustion requirements little more than an optional step, in direct contradiction to the language of §2000e-5(f)(1) and the policy supporting the exhaustion requirement. Rather than discourage settlement, as Jackson claims, the reasoning would encourage the early withdrawal of EEOC charges and permit the premature filing of civil actions prior to any EEOC efforts. *See Hill*, 352 F.3d at 1145 ("If plaintiffs could file before [receiving a right-to-sue notice], the time of the courts and of lawyers would be wasted with cases that ended up being resolved or abandoned at the administrative level."). In those cases in which a settlement agreement ultimately fails, the plaintiff retains options that do not require the abandonment of Title VII's re-

11

quirements. See **Sherman**, 709 F.Supp. at 1437 ("Even if this unsupported allegation were true, it does not explain Sherman's failure to reinstate her charges after Standard Rate's alleged breach of the settlement agreement or seek a right-to-sue letter from the EEOC prior to filing the instant amended complaint.")

When Flannery allegedly violated the settlement agreement, Jackson could have filed a new EEOC charge alleging retaliation. After receiving a right to sue letter, Jackson then would have had the option of proceeding under both Title VII and state law for breach of contract.

With the dismissal of her Title VII claim, Jackson's remaining claim, arising under state law, is for breach of contract. The court remands this claim to Lake County, Indiana Superior Court. See **Myers v. County of Lake, Indiana**, 30 F.3d 847, 850 (7th Cir. 1994)("How far state law exposes state and local agencies to liability is a delicate question that federal judges should hesitate to tackle.").

_____

For the foregoing reasons, the Motion For Partial Summary Judgment filed by the defendant, Trustees of Purdue University, on April 21, 2006 is **DENIED WITHOUT PREJUDICE**, the Defendant's Second Motion For Summary Judgment filed by Purdue on June 30, 2006 is **GRANTED**, and the Motion To Strike filed by Purdue on August 10, 2006 is **DENIED AS MOOT**.  This case is **REMANDED** to the Lake County, Indiana Superior Court.

ENTERED this 16th day of October, 2006

                                          s/ ANDREW P. RODOVICH
                                            United States Magistrate Judge